JOHN BIANCO *vs.* HARRISON L. ASHLEY.

Berkshire. June 28, 1933. — September 11, 1933.

Present: RUGG, C.J., PIERCE, WAIT, DONAHUE, & LUMMUS, JJ.

Zoning, "Rear lot line." *Municipal Corporations,* Officers and agents. *Practice, Civil,* Auditor: findings; Drawing of inferences. *Mandamus. Evidence,* Competency. *Words,* "Rear lot line."

In a petition for a writ of mandamus commanding the building inspector of a city to revoke a building permit, the issue was, what was the "rear lot line" of the lot of land in question, as those words were used in the zoning ordinance of the city. *Held,* that

(1) The determination of that issue was largely a question of fact,

to be made in the first instance by the respondent in the exercise of his sound judgment;

(2) There was no error in admitting evidence as to the factors which the respondent took into consideration in reaching his conclusion.

The petition above described was referred to an auditor, the reference not providing that his findings should be final. From detailed findings by him, it appeared that the lot of land in question was located at the southeast corner of two streets, having a short frontage on the northerly street and a long frontage on the westerly street; that for many years it had been occupied by a dwelling house and had had its front line on the northerly street; that thereafter its ownership changed, the dwelling house was demolished, and the building permit was granted for business structures so arranged as to front and be numbered on the westerly street and to have their only entrance therefrom. The auditor stated alternative conclusions as to what was the rear lot line of the parcel, depending on whether such a line, once determined, remains unchanged regardless of changes in use of the land or in buildings thereon, or whether it may change with changes in use or buildings. The petition rested upon the basis that the rear lot line was the easterly boundary of the lot. A single justice, hearing the case upon the auditor's report without other evidence, found the facts to be as set forth in the auditor's report and ordered the petition dismissed, but not as a matter of discretion. Upon exceptions by the petitioner, it was *held*, that

(1) The facts found by the auditor must be accepted as true, since there was no other evidence before the single justice;

(2) The single justice was entitled to draw from the facts recited in the auditor's report any or all reasonable inferences;

(3) It was permissible for the single justice to draw the inference that the petitioner had not made out a case for the issuance of the writ: the facts did not require the inference as matter of fact, nor establish as matter of law, that the rear lot line of the land was the easterly boundary;

(4) The exceptions must be overruled.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Berkshire on January 13, 1932, described in the opinion.

The Texas Company was permitted to intervene as a respondent. The case was referred to an auditor, the reference not providing that his findings should be final; and afterwards was heard by *Field*, J., upon the auditor's report without other evidence. Material facts are stated in the opinion. By order of the single justice, the petition was dismissed, but not as a matter of discretion. The petitioner alleged exceptions.

The case was submitted on briefs.

*E. K. McPeck, J. B. Boland & F. W. Cassidy,* for the petitioner.

*C. T. Phelps, E. D. Getman & W. A. O'Hearn,* for the intervener.

RUGG, C.J. This petition for a writ of mandamus is designed to compel the respondent to revoke a building permit or permits granted to an owner of land in North Adams to erect an office building and filling station, on the alleged ground that the granting was contrary to a controlling ordinance the terms of which it was the public duty of the respondent to enforce. The present owner of the land, The Texas Company, has been permitted to intervene as a party. The case was referred to an auditor and was heard upon his report without other evidence. The single justice ruled that there was no harmful error in the admission of evidence, against the objection of the petitioner, and found the facts to be as set forth in the auditor's report and ordered the petition dismissed but not as matter of discretion. The petitioner excepted to the ruling and order and to the refusal to grant him relief.

The main controversy relates to the meaning of "rear lot line" as those words are used in the zoning ordinance of North Adams, to the effect that no building shall be erected in a described business district "so as to extend within less than fifteen . . . feet of the rear lot line." The relevant facts are these: The lot with respect to which the permit was issued is situated on the southeast corner of Quincy and Ashland streets, is rectangular in shape, and faces about fifty-eight feet on Quincy Street and about one hundred forty-two feet on Ashland Street. Land of the petitioner of similar shape adjoins the lot in question on the east and faces on Quincy Street alone. These two parcels form part of a larger block of land bounded on the north by Quincy Street, on the west by Ashland Street, on the south by Chestnut Street, and easterly by two other streets. This block between Quincy and Chestnut streets is for the most part two lots deep, all similar in rectangular shape to the lots of the petitioner and intervener, the long dimension

lying north and south and the narrow dimension lying east and west, divided from each other for the greater part of the distance by a single continuous line substantially parallel to Quincy and Chestnut streets. Quincy Street was formerly much the more important street, but since about 1904, when Ashland Street was widened, they have been of about the same width and the latter has carried much more traffic. The lot of the intervener has been occupied by a dwelling house for many years, which, although fronting and numbered on Quincy Street, had a side entrance on Ashland Street and has been numbered also on the latter street. It is plain that, prior to the events now to be narrated, the front line of the lot was the one fronting northerly on Quincy Street and the "rear lot line" was the southerly boundary, and its westerly side line was on Ashland Street. The lot in question was owned and occupied as a home by one Whitaker until October 28, 1931, when it was conveyed to the intervener. Whitaker, in October, 1930, applied for permission to erect buildings more or less similar to those erected by the intervener, describing the land as number 70 Ashland Street. On November 18, 1931, an application of the intervener for a building permit at 70 Ashland Street was filed together with plans showing the building to be erected on the lot as facing and having its exclusive entrance on Ashland Street and located more than fifteen feet from its southerly line but less than fifteen feet from its easterly line (adjacent to land of the petitioner) and a curb extending the entire length of the Quincy Street frontage of such size as to prevent the entrance of a vehicle. Permit was issued accordingly on November 18, 1931. At that time the dwelling was standing on the lot, but it was soon after purchased and demolished by the petitioner. Shortly after the issuance of the building permit, the petitioner raised the contention that it was contrary to the ordinance because the building thereby authorized was to be erected within less than fifteen feet of the "rear lot line," that is, the easterly line of the lot. This contention was presented to the respondent, who has consistently maintained that the front line of the lot was on Quincy Street and that its rear

line was its southerly boundary. The facts considered by the respondent in reaching that conclusion are set out at length in the record. They comprise the lines of the lot, its shape and dimensions, the history of the use of the lot for many years, the location and proposed uses of the office building and filling station to be erected, the fire hazards, the circumstances that water mains, sewer pipes and gas mains enter the lot from Quincy Street, that the lot in question and the lots on the three other corners of Quincy and Ashland streets were numbered and assessed on Quincy Street, the uniform custom of engineers when dividing a tract of land into building lots to arrange them with greater depth than frontage, that the division of this block of lots indicated that all were laid out and intended to face on either Quincy Street or Chestnut Street, and that particular uses of premises may not be long continued and are subject to frequent changes. His reasons need not be recited further.

The auditor made alternative findings: A, that, if the rear line of a lot once determined remains unchanged regardless of changes in use or in buildings thereon, then the front of the intervener's lot was on Quincy Street and its rear line was its southerly boundary; but, B, that, if "the rear line of a lot does or may change with changes in the use of said lot or changes in the construction thereon, and if the rear line of the lot in the instant case is to be determined not by the considerations set forth" in alternative finding A but by the contemplated use of the lot by the intervener and the other facts as to the location of the proposed building, "in other words, if the front line of a lot is the line toward which the front of the principal building thereon shall face and the line where the entrances to said lot are located and the rear line of a lot is the line opposite the front line and the line toward which the rear of the principal building thereon shall face," then the front line is its Ashland Street line and its rear line is its easterly boundary abutting on land of the petitioner.

The determination of what is the "rear lot line" of a specified parcel of land is largely a question of fact although

partaking in some aspects of questions of law. In the first instance it was the duty of the respondent to make that determination. It involved primarily the exercise of sound judgment as applied to the particular neighborhood. Factors not necessarily competent as evidence might enter into the exercise of that judgment. There was no error in admitting evidence as to the matters which the respondent took into consideration in reaching his conclusion. *French* v. *Jones,* 191 Mass. 522, 530. *Johnson* v. *Lowell,* 240 Mass. 546, 550.

It was the duty of the auditor to make determination what was the rear line of the intervener's lot so far as it was a question of fact. The report sets out at length all the relevant facts. There is no categorical finding on this point. Each alternative finding made by the auditor was posited on a stated supposition as to the law, which was not complete and accurate in application to all the facts disclosed. The front line and the rear line of a lot cannot well be described by a hard and fast rule of law applicable to all cases. The determination of the question is largely a matter of fact. The general location, the manner in which the particular lot and its adjacent lots have been laid out, the customs of surveyors in that respect, the uses to which the lot has been put as well as those to which it is proposed to be put, the practices of public officers charged with duties respecting it, and all the other pertinent facts touching the customs of the neighborhood, may be examined. To these factors is to be applied the meaning usually attached to the words "rear lot line" according to the common and approved usages of the language.

The facts found by the auditor must be accepted as true, since there was no other evidence before the single justice. Of course, assumptions as to the law set forth by the auditor in making the alternative findings are not binding on the single justice. The court may draw from the facts recited in the auditor's report any or all reasonable inferences, and may even reach a conclusion different from that of the auditor if those facts warrant more than one inference. *Fisher* v. *Doe,* 204 Mass. 34, 41. *South Lancaster*

*Academy* v. *Lancaster*, 242 Mass. 553, 556. *Fisher* v. *Drew*, 247 Mass. 178, 180–181. *Ballou* v. *Fitzpatrick*, 283 Mass. 336.

The single justice decided the case on the auditor's report, which was the only evidence before him. This is a proceeding at law. The general finding against the petitioner must stand if it can be supported upon any rational view of the evidence with all reasonable inferences of which it is susceptible. It is not the function of this court to pass upon the weight of the evidence even though reported in full. The only question to be decided is whether as matter of law the finding made by the single justice can be supported, or, stated conversely, whether as matter of law the petitioner is entitled to prevail on the facts found. *Andrews* v. *Registrars of Voters of Easton*, 246 Mass. 572, 576. *LaMarsh* v. *School Committee of Chicopee*, 272 Mass. 15, 19. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143.

We are of opinion that the petitioner has not as matter of law made out a case to require relief. It was quite permissible for the single justice to draw the inference from the facts set forth in the auditor's report that the petitioner had not made out a case for the issuance of the writ. The facts did not require the inference as matter of fact, or establish as matter of law, that the rear lot line of the intervener's land was the boundary adjacent to land of the petitioner.

*Exceptions overruled.*