MAYOR AND CITY COUNCIL OF BALTIMORE ET AL. *v.* PRINCETON CONSTRUCTION COMPANY, INC. ET AL.

RESTIVO ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

(Two Appeals in One Record)

[No. 271, September Term, 1961.]

178

*Decided July 3, 1962.*

The causes were argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and SYBERT, JJ.

*James B. Murphy, Assistant City Solicitor of Baltimore* (in the first case), with whom were *Francis B. Burch, City So-licitor,* and *John A. Dewicki, Assistant City Solicitor* (in the second case) on the brief, for the City.

*Samuel S. Eisenberg* for Philip J. Restivo et al. in both cases.

*Z. Townsend Parks, Jr.,* with whom was *H. Emslie Parks* on the brief, for the appellees in the first case and Vernon W. McPherson, Inc., in the second case.

SYBERT, J., delivered the opinion of the Court.

This case involves two appeals arising out of separate suits brought against the owners of a tract of land on Mayfield Avenue in Baltimore City which has been the subject of pro-tracted litigation and a previous decision by this Court, in *Restivo v. Princeton Constr. Co.,* 223 Md. 516, 165 A. 2d 766 (1960). In that case it was held that the Baltimore City Zoning Ordinance required every house or lot in a develop-ment plan to front on a public street at least thirty feet wide; that the Princeton Construction Company, which originally sought to develop the tract, had violated the Ordinance by fronting eighteen proposed rowhouse lots and dwellings on

an interior court or utility right of way, and that therefore the permits granted to Princeton to build were invalid.

After the issuance of the original permits Princeton had constructed foundations for the eighteen proposed homes. After the mandate of this Court in the *Restivo* case was issued efforts were begun by the Zoning Commissioner to force removal of the foundations. However, in a letter of January 20, 1961, to Princeton, the Building Inspection Engineer (Zoning Commissioner) stated: "As an alternative, you may, of course, file proper plans meeting zoning code requirements and obtain a new permit." No action was taken by Princeton to remove the foundations, although steps were taken to redesign the project to provide a public street on which to front the houses. As a result of the alleged continuing violation, Baltimore City in May, 1961, filed a bill for a permanent mandatory injunction in Circuit Court No. 2 of Baltimore City asking that court to require Princeton and Vernon M. McPherson, its president, to remove the foundations and restrain the defendants from erecting any further structures on the land. Neighboring property owners were permitted to intervene as plaintiffs.

At the hearing before Circuit Court No. 2 in June, 1961, there was evidence that Princeton had submitted a new plan for development of the property which had received the tentative approval of the Planning Commission. By the time the decree was handed down in September, 1961, Princeton had removed foundations on five of the lots on the northwesterly side of the property in order to make conformity with the Zoning Ordinance possible in regard to the remaining structures in the new plan. The Chancellor in his decree permanently enjoined Princeton from erecting any building on the five lots, but denied the request for a mandatory injunction to remove the remaining foundations. The first appeal now before us was taken by the City and neighboring owners from that decree.

Prior to that decision the new owner of the property, Vernon W. McPherson, Inc., submitted final subdivision plans, which were given final approval by the Planning Commission

over the protest of neighboring property owners. The new design reduced the number of houses to be built to ten. The right of way had been enlarged on the plan so as to constitute a proposed public street, fifty feet in width with a thirty-four foot paved area, projecting perpendicularly from Mayfield Avenue for approximately 330 feet, and having no terminus on another public street but forming instead a cul-de-sac arrangement. The proposed structures are to be placed along the southeast side of the newly planned street in two units of five homes each.

An appeal by neighboring property owners from the action of the Planning Commission in approving these plans was dismissed by the Baltimore City Court, apparently on the ground that the appellants had no standing under Sec. 120 of the City Charter to maintain such an appeal. Thereupon in September, 1961, the Zoning Commissioner granted the permits for the ten homes under the new plan. A negative appeal to the Board of Municipal and Zoning Appeals, taken by the same neighbors, was dismissed by that body, and a further appeal was made to the Baltimore City Court where the decision of the Board was affirmed. The second appeal now before us was taken by the neighbors from that court's order.

Princeton and Mr. McPherson as appellees in the first case ask that that appeal be dismissed on the ground that the main issue involved, the removal of the existing foundations, has become moot. The contention is based upon the facts that valid permits are now outstanding to construct houses of the same shape, size and design as those partially completed under the prior permits, and that even if the decree in the first case were reversed and the foundations were torn out, the builder could then rebuild exactly the same structures under its present permits. However, the denial of the mandatory injunction in the first case was conditioned on the issuance by the Zoning Commissioner of valid and subsisting permits to continue construction on the property. In the second appeal, the neighbors allege certain violations of the Zoning Ordinance which, if found, would require us to reverse the trial court's order affirming the validity of the current permits issued to McPherson. In that event we should have to proceed

under the first appeal. Therefore, the motion to dismiss the first appeal is denied and we shall proceed to the questions raised in the second appeal.

Appellants' first contention is that the third application (for the current permits) was filed prematurely, in violation of Sec. 35 (d) of the Zoning Ordinance (1958 ed.), which reads in part:

> "* * * If an application is *disapproved by the Board of Municipal and Zoning Appeals,* thereafter the Board shall take no further action on another application for substantially the same proposal, on the same premises, until after twelve (12) months from the date of *such last disapproval.*" (Emphasis supplied.)

The appellants argue that the present plan for the property, for which permits were issued by the Zoning Commissioner on September 11, 1961, and approved by the Zoning Board on October 27, 1961, is substantially the same plan rejected by this Court in the *Restivo* case. The mandate in that case was received on January 16, 1961, and the appellants maintain that that date should be determinative as to the limitation set out in the Ordinance. However, even if we should assume that the plan filed with the latest application is "substantially the same proposal" as that filed with the rejected application (which does not appear to be the case), the result contended for would be contrary to the unambiguous wording of the Ordinance quoted above. It is plain from the italicized words that the date of the last disapproval by the Board is the date from which the twelve months run, a fact recognized by the learned trial judge in his opinion. The record shows that the last disapproval by the Board of an application in this matter occurred on May 26, 1959, and hence the Board's approval of the current permits in October, 1961, did not violate Sec. 35 (d) of the Ordinance.

The appellants next argue that the present plan of the builder contravenes provisions of the Zoning Ordinance in regard to setbacks and facing on a street. They say that Secs. 27 and 28 of the Ordinance are violated in that the depth of

the front yard of at least one of the lots is fifteen feet, whereas the Ordinance would require a 20 foot depth. This conclusion is based upon the premise that the lot in question faces on Mayfield Avenue, a forty-foot street, as was called for in the original plan of the builder. However, the current plan, which an official of the Building Inspection Engineer's Office testified fell "properly within the existing zoning code," has as a basic feature the proposed fifty foot public street, instead of the previously contemplated thirty foot utility right of way. The new street was laid out for the express purpose of bringing the plan within the requirements of the Ordinance, and all of the remaining ten proposed houses will face on it. Since the new street is fifty feet in width between property lines the Ordinance requires only a fifteen foot front yard depth, which is met by the lot in question. Although the Zoning Ordinance is not specific on the point, the policy of the Planning Commission has been that the width of a street, as defined in Sec. 48 (g), encompasses the distance between property lines and not the distance between curbings, as appellants argue. See the Planning Commission's *Rules and Regulations for Land-Subdivision,* C. 1, p. 15, and 3 *Yokley, Municipal Corporations,* § 466, where the author states that a public street includes both the roadway for vehicles and the sidewalk for pedestrians, citing several cases.

Appellants also maintain that Secs. 27 and 48 (g) of the Ordinance forbid the construction of a cul-de-sac as provided for in the present plan for the subdivision. Section 48 (g) defines the width of a street as "[t]he mean of the distances between the sides of a street *between two intersecting streets."* Section 27 (1) refers to "lots fronting on the side of a street *between two intersecting streets."* Appellants cite the words italicized by us and point out that the present plan does not provide for a street between two intersecting streets, since Mayfield Avenue is the only intersecting street. They argue that the cul-de-sac proposed as a public street will not meet the requirements of the Ordinance and will constitute a menace to public health and safety. The zoning authorities obviously gave no such interpretation to the Ordinance, and

there is no intimation that their study of the plans led to any conclusion that the design of the proposed street would be detrimental to the public good. The fact that the proposed public way was fifty feet wide and would serve only a few homes at its terminus was an influential factor. We find no impropriety in the approval of such an arrangement in a residential development and we agree with the trial court that the appellants' inference of illegality is not warranted in fact or in law. While we have not found any reference in the Zoning Ordinance to cul-de-sacs, specific provisions for them are contained in the Planning Commission's *Rules and Regulations, supra,* C. 4, p. 16. The weight of authority in other jurisdictions is that a cul-de-sac arrangement does not deprive a street of its character as a public highway. *New York C. & St. L. R. Co. v. Lincoln Nat. Life Ins. Co.,* 142 N. E. 2d 437 (Ind. 1957); *Purvis v. Busey,* 71 So. 2d 18 (Ala. 1954); *Illinois Cent. R. Co. v. Bennett,* 296 F. 436 (C. A. 5, 1924); 39 C. J. S., *Highways,* Sec. 1 b, and cases there cited.

Appellants also argue that the front yard of one of the lots, which they describe as being in the form of a "truncated triangle", does not conform to the definition of a front yard found in Sec. 48 (m). They call attention to the words of the definition: "A clear, unoccupied space * * * *extending across the entire width* of the lot and situated between the front line of the building and the front line of the lot." (Emphasis supplied.) The front line of the lot in question is an arc measuring 19.25 feet along the circle at the end of the cul-de-sac, the back line is seventy-six feet in length, and the sides of the lot are diagonal lines. The reasoning of appellants seems to be that since the greatest width of the lot is seventy-six feet, the entire front yard of the lot (as well as the frontage on the street) must be seventy-six feet wide. There is no merit in this novel contention. To follow the argument to its logical conclusion would result in a requirement that every lot must be rectangular. We find no such requirement in the Zoning Ordinance. The Ordinance itself, in fact, recognizes that some lots will be laid out in irregular shapes. See Sec. 48 (k). Where a lot otherwise meets every requirement of the Zoning Ordi-

nance, no inference can be derived from Sec. 48 (m) which would restrict its shape or design.

Appellants' final contention with respect to alleged violations of the Zoning Ordinance is that the Zoning Commissioner issued the current permits to appellee knowing that it had not complied with the ruling of this Court in the *Restivo* case, in that the proposed houses did not face on a public street. The gist of this argument appears to be that the newly proposed public street had not actually been dedicated to the City before the trial of the case below, and that therefore the permits should not have been granted. This contention is a mere exercise in semantics and the wording of our opinion in *Restivo* (at 527 of 223 Md.), that no permit shall issue until the application shows "that there *will be conformity* * * * with the provisions of the Ordinance" (emphasis supplied), reveals the lack of substance in the argument.

Appellants' final group of contentions relate to alleged error on the part of the Zoning Commissioner in failing to take an appeal from the approval of the current plan by the Planning Commission. The appellants contend that since the Zoning Commissioner is given authority to appeal from decisions of the Planning Commission by Sec. 120 of the Baltimore City Charter (1949 ed.), he should have appealed in this case because the Planning Commission approved a plan which clearly violated its own published rules and regulations pertaining to cul-de-sacs. Appellants claim that they are parties properly aggrieved by the Zoning Commissioner's failure to appeal.

This argument overlooks certain facts. The Zoning Commissioner, as one of the "officers" mentioned in Sec. 120 of the Charter, has discretion as to whether or not he will take an appeal from a decision of the Planning Commission, and interested neighbors have no right to require him to exercise that discretion in a certain manner. In any event, the questions raised are not properly before this Court since this is an appeal from an affirmance of the Zoning Board's decision, and the Board has no power to review questions regarding the legality of acts of the Planning Commission (and did not at-

tempt to do so in this case). *Windsor Hills Imp. Ass'n v. Balto.*, 195 Md. 383, 393, 73 A. 2d 531 (1950). As Judge Henderson noted in his dissenting opinion in the *Restivo* case, *supra*, (at 529 of 223 Md.), the provision in Sec. 120 of the Charter for direct appeal from the decisions of the Planning Commission would seem to negative the idea that its actions are open to collateral attack, as appellants here suggest.

There being no error below, we will affirm the order which is the subject of the second appeal.

As to the first appeal, we feel the Chancellor's refusal to grant the mandatory injunction to remove the remaining foundations from the tract was, under the circumstances, a correct decision. As the Chancellor noted, after the decision in the *Restivo* case Princeton had taken prompt steps to redesign its plans, as suggested by the Building Inspection Engineer's Office, so as to comply with this Court's ruling. Testimony in regard to the new plans was relevant in the posture of the case and therefore was properly admitted. Before the decree was rendered permits had in fact been issued by the Zoning Commissioner to allow the erection of houses on the remaining foundations. The Chancellor refused to impose what he felt would be an inequitable and needless burden and expense on Princeton by forcing it to tear out foundations which would be used if the proposed plans were finally upheld. Instead he required Princeton to eliminate certain objectionable conditions in regard to the unfinished foundations which allegedly constituted a nuisance and possible hazard to children. Thus he made provision for adequate safeguards until such time when active building on the foundations should be commenced pursuant to a valid and subsisting permit. We see no reason in this case for the application of the maxim of "unclean hands" against Princeton for its alleged violation of zoning provisions, as appellants urge. Already deeply involved financially, Princeton took reasonable (and successful) steps to comply with the decision of this Court in *Restivo*, in cooperation with the zoning authorities, who suggested and guided the course of action taken. The Chancellor's decree afforded protection to all the parties concerned and, in light

of our holding in the second appeal, we find no error in it. Hence we shall affirm the decree in the first appeal.

> *Decree in first appeal affirmed, one-half of the costs of that appeal to be paid by the City of Baltimore, and one-half by the remaining appellants; order in second appeal affirmed, appellants to pay the costs.*