## M. & C. C. OF BALTIMORE AND MAHONEY ET UX. *v.* SWINSKI ET AL.

[No. 287, September Term, 1963.]

*Decided June 11, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*John A. Dewicki, Assistant City Solicitor,* with whom was *Joseph Allen, City Solicitor,* on the brief, for M. & C. C. of Baltimore, part of appellants.

*Paul T. McHenry, Jr.,* with whom was *Francis M. Connolly,* on the brief, for John Mahoney, and wife, other appellants.

*Harry W. League, Jr.,* for appellees.

HORNEY, J., delivered the opinion of the Court.

The primary question presented by this appeal is whether the zoning ordinance of Baltimore City requires the physical front of a building to face the street side of a lot.

Two lots are involved. Both are owned by John and Betty Mahoney (the Mahoneys). One lot, known as 5900 Loch Raven Boulevard, is located at the northwest corner of the boulevard and Gleneagle Road, and measures 80 feet by 130 feet, with the short side facing on the west side of the boulevard and the long side binding on the north side of the road. The other lot, known as 5904 Loch Raven Boulevard, is located 153.5 feet north of the road, and measures 73.5 feet by 130 feet, with the shorter side facing the boulevard. A vacant lot (also 73.5' x 130'), known as 5902 Loch Raven Boulevard, lies between the two lots owned by the Mahoneys.

The Mahoneys applied to the Zoning Commissioner for permits to construct on each lot a two story-four unit apartment, each with a width of 28'8" facing the boulevard and a depth of 76'8" running lengthwise towards an alley in the rear of the lots. Neither apartment physically fronts on the boulevard. The physical front of the 5900 apartment faces the road on the south side of the lot. The physical front of the 5904 apartment faces the north side of the lot. Neither of the apartments has an entrance or doorway on the boulevard side of the lot. Instead, both have entrances or doorways in the middle of one of their long sides and there are pavements leading from the entranceways to the sidewalk on the boulevard. There is also a pavement leading from the entranceway of the apartment on the corner lot to the sidewalk on the road.

The permits were granted and some of the neighborhood landowners, Nancy Swinski and others (the protestants), appealed to the Board of Municipal and Zoning Appeals, which, on finding that the building plans filed by the Mahoneys with the building engineer were in compliance with the zoning ordinance, unanimously sustained the action of the zoning commissioner. On appeal by the protestants to the Baltimore City Court, the board was reversed, and the Mahoneys (and the Mayor and City Council of Baltimore) appealed to this Court.

The apartment under construction on the corner lot has set-backs of 25 feet from the west side of the boulevard, 31 feet 4 inches from the north side of the road to the five-foot wide entranceway, 28 feet 4 inches from the west side of the alley, and 15 feet from the north side lot line. On the other lot, the apartment has set-backs of 25 feet from the west side of the boulevard, 15 feet from the south side lot line, 28 feet 4 inches from the west side of the alley, and 24 feet 10 inches from the north side lot line to the five-foot wide entranceway.

The minimum yards requirements for a lot (the size of these) located on a street (such as Loch Raven Boulevard) having a width of one hundred feet or more, calculated in accordance with the formulas set forth in §§ 24 and 28 of the zoning ordinance, are 10 feet for a front yard, 26 feet for a rear yard, and 10 feet for side yards. The ordinance defines a *front yard* as the space "between the front line of the building and the front line of the lot." Ord. § 48(m) ; a *rear yard* as the space "between the rear line of the building and the rear line of the lot." Ord. § 48(n) ; and a *side yard* as the space "between the building and the side lot line." Ord. § 48(o). The *front* or *frontage* of a lot is defined as "that side of a lot abutting on a street or way and ordinarily regarded as the front of the lot, but it shall not be considered as the ordinary side of a corner lot." Ord. § 48(t).

The lower court, relying on *Restivo v. Princeton Construction Co.,* 223 Md. 516, 165 A. 2d 766 (1960), found "not only that the physical front of a building is the front but also that the physical front must face the front of the lot" and reversed the board because it believed that §§ 48(t) and 48(m) of the zoning ordinance compelled such a finding.

In *Restivo v. Princeton Construction Co., supra,* we held that the Baltimore City zoning ordinance required every house or lot in a development plan to front on a public street at least thirty feet wide. See also *Baltimore City v. Princeton Construction Co.,* 229 Md. 176, 180, 182 A. 2d 803 (1962). Although no mention was made in *Restivo* as to what constituted the front of a house, we think it is clear that the physical construction of a building establishes the frontage for purposes of determining whether there has been compliance with the zoning

ordinance. In *Rhinehart v. Leitch,* 140 Atl. 763 (Conn. 1928), it was said (at p. 763) that:

"'The word 'front' as applied to a city lot has little, if any, inherent application, but it takes on a borrowed significance from the building which is or may be constructed thereon. *Connecticut Mutual Life Ins. Co. v. Jacobson,* 75 Minn. 429, 432, 78 N.W. 10; *Adams v. Howell,* 58 Misc. Rep. 435, 108 N.Y.S. 945, 947. As applied to a building, 'front' in general usage refers to that side of it in which is located the main entrance. *Howland v. Andrus,* 81 N. J. Eq. 175, 180, 86 A. 391; Oxford and Standard Dictionaries, 'front.' When used of a lot with a house upon it, it means that portion of the lot abutting upon the street toward which the house faces."

See also *Rombauer v. Compton Heights Christian Church,* 40 S. W. 2d 545, 551 (Mo. 1931); *Bianco v. City Engineer & Building Inspector,* 187 N. E. 101, 103 (Mass. 1933); *In re McInerney,* 34 P. 2d 35, 43 (Wyo. 1934). To the same effect see *Howard Homes, Inc. v. Guttman,* 190 C. A. 2d 526 (Cal. App. 1961), where it was said (at p. 531) that the "front" or "face" of a house "means that portion which contains the main entrance and which is the most attractive aesthetically."

It is apparent, therefore, that the Baltimore City zoning ordinance, as interpreted in *Restivo,* requires the main entrance of all buildings to face the street that the lot faces. Since, in the case at bar, neither of the apartments is being built so as to physically front on Loch Raven Boulevard, we must conclude that their construction is in violation of the zoning ordinance. Any other holding in this case would require a change in the ordinance to the effect that the physical front, or main entrance, of a building erected on a lot need not face the street side of the lot so long as there has been compliance with the prescribed yard requirements.

For the reasons stated, the decision of the lower court will be affirmed.

*Order affirmed; the appellants to pay the costs.*