697 A.2d 455

**MARRIOTT EMPLOYEES FEDERAL CREDIT UNION**

v.

**MOTOR VEHICLE ADMINISTRATION.**

No. 93, Sept. Term, 1996.

Court of Appeals of Maryland.

July 29, 1997.

438

John P. Van Beek, Alexandria, VA, for Appellant.

Hillel Traub, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Glen Burnie, for Appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

RAKER, Judge.

In this appeal, we are called upon to determine whether Maryland Code (1977, 1992 Repl.Vol., 1996 Cum.Supp.) § 13–114(e) of the Transportation Article,[1] which governs registration and titling of vehicles that have been repossessed by a secured party, requires that a repossessed vehicle be titled in

---

1. Unless otherwise indicated, all statutory references hereinafter are to Maryland Code (1977, 1992 Repl.Vol., 1996 Cum.Supp.) Transportation Article.

Maryland prior to the repossession in order for the Motor Vehicle Administration of the Maryland Department of Transportation (MVA) to issue a new certificate of title in the secured party's name.

Appellant Marriott Employees Federal Credit Union (Marriott) is a Maryland-based federal credit union with members nationwide. On August 4, 1994, Barbara Houston, a Texas resident and credit union member, borrowed $1700.00 from Marriott. She secured the loan with a 1984 Chevrolet Camaro automobile. The most current certificate of title for the 1984 Chevrolet was issued by the State of Texas in the name of Thomas Arnold, a resident of Austin, Texas. Apparently, the car was never titled in Ms. Houston's name and Marriott never perfected its security interest by noting the lien on the certificate of title. *See* TEX. TRANSP. CODE ANN. § 501.111(a) (security interest in automobile perfected by notation on certificate of title).

In late 1995, Houston defaulted on the loan and Marriott repossessed the vehicle in Texas on December 21, 1995. The automobile was then transported to Maryland because, according to Marriott's counsel, Marriott was unable to get a new certificate of title in Texas. Pursuant to § 13–114(e) and in accordance with its usual procedure, Marriott applied to the MVA for a new certificate of title, often called a repossession title or a "repo" title, for the repossessed Chevrolet. Marriott presented to the MVA the security agreement, the notices sent to Houston advising her of the redemption period and a copy of the condition report prepared by the repossessor, but the MVA refused to issue the repossession title. A representative of the MVA informed Marriott that the MVA would not issue a repossession title on the Chevrolet unless Marriott secured a court order directing the MVA to do so.

Marriott then filed a declaratory judgment action in the Circuit Court for Montgomery County. In its complaint for declaratory relief, Marriott asked the circuit court to order the MVA "[t]o issue a Maryland title to a 1984 Chevrolet Camaro Automobile . . . in the name of the Plaintiff, Marriott Federal

Employees Credit Union" and, more broadly, "[t]o issue a repossession title in favor of the Plaintiff, Marriott Employees Federal Credit Union, for any vehicle repossessed by the Plaintiff that was not previously titled in the State of Maryland, ... provided that the Plaintiff supplies the Defendant with the certification as required by Transportation § 13-114(e) of the Annotated Code of Maryland."

At trial, Marriott portrayed the MVA's refusal to issue a repossession title on the Chevrolet as an abrupt change in a long-standing administrative policy. According to Troy Cooper, the collection supervisor for Marriott, the MVA, over the past several years, consistently issued repossession titles in similar cases when presented with the documentation that Marriott had presented here. Marriott introduced a letter dated November 24, 1995, signed by James E. Hose, Director of the Vehicle Registration Division. The letter reads:

Based on recent advice by the Assistant Attorney General, the Motor Vehicle Administration (MVA) will no longer process a request for a repossession title unless the vehicle is currently titled in Maryland.

In accordance with advice of counsel, unless a Maryland title has been issued, the secured party applying for title must secure a court order requiring the Administration to issue a title.

... Thank you for your cooperation and assistance with this change.[2]

The MVA, on the other hand, insisted that there had been no change in policy. Although inconsistent with the November 24, 1995, letter, Rhonda Witt, Chief of Vehicle Registration, testified that the MVA will accept out-of-state repossessions and issue repossession titles as long as the foreign state's repossession procedures have been fulfilled. Ms. Witt also stated that Marriott's failure to present a Texas title in

---

2. The trial court noted that this letter was not addressed to any specific recipient, but assumed that the letter was made available to anyone and concluded that it "seems kind of official."

the name of their debtor and with their lien noted on it precluded Marriott from obtaining a Maryland title.

The circuit court entered an order declaring that "Maryland Annotated Code, Transportation Article § 13–114(e) authorizes the Motor Vehicle Administration to transfer thereunder on its records the ownership of a vehicle that has been repossessed by a secured party *only under the circumstance wherein a vehicle has a pre-existing title file with the Motor Vehicle Administration.*" (emphasis added). Marriott appealed to the Court of Special Appeals. We granted certiorari on our own motion before consideration by the intermediate appellate court.

Section 13–114 addresses the titling and registration of automobiles that have been involuntarily transferred by way of, *inter alia,* judicial sale or disposition in a will. Section 13–114(e) addresses one particular type of involuntary transfer—the transfer of the vehicle from the owner to a secured party pursuant to a repossession.[3] Section 13–114(e) provides:

---

**3.** We note that, although § 13–114(e) provides a mechanism to do so, a secured party with a vehicle that has been repossessed need not apply for a repossession title. Section 13–102 sets out exceptions to the general rule of § 13–101.1 that the owner of a vehicle in this State must apply for a certificate of title for the vehicle. Section 13–102(8) provides that no certificate of title is required for "[a] vehicle in which interest has passed to a secured party on default of the owner." Apparently, some secured parties wish to have repossessed vehicles titled in their names, perhaps because they wish to keep the car, *see* Md.Code (1975, 1997 Repl.Vol.) § 9–505(2) of the Commercial Law Art., or because titling the car in their name makes resale easier.

A survey of the law of our sister states governing titling of repossessed vehicles reveals that many states explicitly provide that a secured party holding a vehicle for resale need not have the vehicle titled in the secured party's name, but upon resale of the repossessed vehicle, the secured party must submit an affidavit or certification similar to that required by § 13–114(e). *See, e.g,* ARK.CODE ANN. § 27–14–907 (Michie 1995); CONN. GEN.STAT. § 14–181(b) (1997); ME.REV.STAT. ANN. tit. 29–A, § 665 (West 1996); MASS. ANN. LAWS ch. 90D, § 17(b) (1996); MISS. CODE ANN. § 63-21-35(2) (1996); N.H.REV.STAT. § 261:16(II) (1996); N.M. STAT. ANN. § 66–3–105 (Michie 1996); N.Y. VEH. & TRAF. LAW § 2115(b) (Consol.1996); R.I. GEN. LAWS § 31-3.1–14(b) (1996); S.C.CODE ANN. § 56–19–390 (1996); TENN.CODE ANN. § 55–4–119(a)(2) (1996); V.I.CODE ANN. tit. 20, § 217(b) (1996); VT. STAT. ANN. tit. 23,

(e) *Vehicle repossessed by secured party.*—(1) The Administration may *transfer on its records the ownership of a vehicle that has been repossessed by a secured party,* if the secured party submits to the Administration a certification that states:

(i) That the secured party has a security interest in the vehicle;

(ii) That, on the basis of the security agreement or other lawful basis, the secured party has a right to the possession of and title to the vehicle;

(iii) That the secured party has possession of the vehicle; and

(iv) Any other information that the Administration requires.

(2) On submission of the certification to it, the Administration may issue a new certificate of title if it is satisfied that the secured party is entitled to one. (emphasis added).

Ultimately at issue in this appeal is the phrase "transfer on its records the ownership of a vehicle that has been repossessed." Specifically, we must decide whether the General Assembly intended this phrase to limit the applicability of § 13–114(e) to those repossessed vehicles that are titled in Maryland at the time of the repossession. Marriott contends that the disputed phrase merely means that the MVA shall place such ownership on its records. The MVA, on the other hand, contends that "transfer on its records" requires an existing title record in Maryland before ownership can be transferred on the records to the secured party.

 Our task in this case is one of statutory construction. The cardinal rule of statutory construction is to ascertain and carry out the intention of the Legislature. *State v. Pagano,* 341 Md. 129, 133, 669 A.2d 1339, 1340 (1996). Our search for legislative intent begins, and usually ends, with the words of

§ 2025(b) (1996); WASH. REV.CODE § 46.12.130(2)–(3) (1996); W. VA. CODE § 17A–4–5 (1996).

the statute at issue. *Schuman, Kane v. Aluisi,* 341 Md. 115, 119, 668 A.2d 929, 931 (1995). When the statutory language is clear, we need not look beyond the statutory language to determine the Legislature's intent. *Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 633 (1987).

Sometimes the statutory language is susceptible of more than one meaning. When faced with an ambiguity, courts must consider not only the literal or usual meaning of the words but also the meaning of words in light of the statute as a whole and within the context of the objectives and purposes of the enactment. *Romm v. Flax,* 340 Md. 690, 693, 668 A.2d 1, 2 (1995). Common sense must guide us in our interpretation of statutes, and "we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994). Although this Court is not limited to the literal or usual meaning of statutory language, *Romm,* 340 Md. at 693, 668 A.2d at 2, the Court may not insert or omit terms to make a statute express an intention not reflected in the statute's original form. *Bridges v. Nicely,* 304 Md. 1, 10–11, 497 A.2d 142, 147 (1985); *Police Comm'r v. Dowling,* 281 Md. 412, 419, 379 A.2d 1007, 1011 (1977).

The consistent and long-standing construction given a statute by the agency charged with administering it is entitled to great deference, *Balto. Gas & Elec. v. Public Serv. Comm'n,* 305 Md. 145, 161–62, 501 A.2d 1307, 1315 (1986), as the agency is likely to have expertise and practical experience with the statute's subject matter. *See, e.g., Sinai Hosp. v. Dept. of Employment,* 309 Md. 28, 46, 522 A.2d 382, 391 (1987); 2B N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION, § 49.05, at 17 (5th ed. 1993). The weight given an agency's construction of a statute depends on several factors—the duration and consistency of the administrative practice, the degree to which the agency's construction was made known to the public, and the degree to which the Legislature was aware of the administrative construction when it reenacted the rele-

vant statutory language. *Magan v. Medical Mutual,* 331 Md. 535, 546, 629 A.2d 626, 632 (1993). Other important considerations include "the extent to which the agency engaged in a process of reasoned elaboration in formulating its interpretation" and "the nature of the process through which the agency arrived at its interpretation," with greater weight placed on those agency interpretations that are the product of adversarial proceedings or formal rules promulgation. *Balto. Gas & Elec.,* 305 Md. at 161–62, 501 A.2d at 1315. An administrative agency's construction of the statute is not entitled to deference, however, when it conflicts with the unambiguous statutory language. *Falik v. Prince George's Hosp.,* 322 Md. 409, 416, 588 A.2d 324, 327 (1991). *See generally* 2A SINGER, *supra,* § 45.12.

The phrase under scrutiny in this case, "transfer on its records the ownership," does not appear elsewhere in the Maryland Code and we find no reported opinions interpreting this language. Section 13–114(e), and its precursors, have been part of the Maryland Code since 1970. Senate Bill 10 of the 1970 legislative session first introduced a provision dedicated exclusively to repossession titles, which was then codified as Art. 66½, § 3–114(c).[4] 1970 Maryland Laws, ch. 534, § 1, at 1337. Although this Court often looks to legislative history to guide us in our task of statutory construction, *see Kaczorowski v. City of Baltimore,* 309 Md. 505, 514–15, 525 A.2d 628, 632–33 (1987), our search has uncovered no legislative history concerning Senate Bill 10 of the 1970 legislative session or concerning reenactment of the statutory language at issue in this case. Section 13–114(e) and its precursors have undergone only minor semantic changes since 1970, and the phrase "transfer on its records the ownership of a vehicle that has been repossessed" has remained unchanged through-

---

4. Prior to 1970, the Maryland Code contained only a general provision addressing involuntary transfers and not a specific provision dealing with repossession titles. *See, e.g.,* Md.Code (1951) Art. 66½, § 49.

out.[5]

There are at least two competing interpretations of the statutory language at issue in this case. One interpretation is that by choosing the verb "transfer" in the phrase "transfer on its records the ownership of a vehicle that has been repossessed" the Legislature intended to require an existing title on the records in Maryland in order to issue a repossession title pursuant to § 13–114(e). Another interpretation construes the verb "transfer" merely to direct the MVA to enter on its records the issuance of a repossession title to the secured party, regardless of where the vehicle was titled before the repossession.

■ We look to dictionary definitions of the verb "transfer" for insight into the legislative intent. Although dictionary definitions do not provide dispositive resolutions of the meaning of statutory terms, *see Morris v. Prince George's County*, 319 Md. 597, 606, 573 A.2d 1346, 1350 (1990), "dictionaries . . . do provide a useful starting point for determining what statutory terms mean, at least in the abstract, by suggesting what the legislature could have meant by using particular terms." 2A SINGER, *supra*, § 47.28 (1996 Cum.Supp.). *Webster's Third New International Dictionary* defines "transfer" as a transitive verb meaning, *inter alia*, to "carry or take from one person or place to another" and "to cause to pass from one person or thing to another." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2427 (1961). *Black's Law Dictionary* defines transfer as a verb meaning "[t]o convey or remove from one place, person, etc., to another; pass or hand over from one to another; specifically, to change over the possession or control of. . . ." BLACK'S LAW DICTIONARY 1497(6th ed. 1990).

■ The word "transfer" appears frequently in the Maryland Code, but the phrase "transfer on its records" does not

---

**5.** In 1986, the General Assembly repealed and reenacted the Transportation Article and renumbered the sections. At this point, the section on repossession titles became § 13–114(e). There have been no changes to § 13–114(e) since 1986. *See* 1986 Maryland Laws, ch. 472, § 1, at 1705.

appear elsewhere in the Code. Title 13 of the Transportation Article, dedicated to titling and registration of vehicles, refers frequently to the "transfer" of vehicles and the "transfer" of vehicle registrations. *See, e.g.,* § 13–112, Transfer of vehicles generally; § 13.502.1, Transfer to another vehicle ("The former registered owner of a transferred vehicle may have its plates and registration number transferred to another vehicle...."). In the case of the transfer of vehicles, the car passes from one person to another. In the case of registration, the registration passes from one vehicle to another. The meaning of the word "transfer" may be free from ambiguity in some contexts, such as the transfer of a vehicle or the transfer of a registration, yet be ambiguous in another context, such as the phrase "transfer on its records." *See Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 74, 517 A.2d 730, 732 (1986).

"Transfer" must be read in conjunction with "on its records." We reject the MVA's contention that "on its records" should be construed as *"based* on its records" and interpreted to mean that the transfer of ownership can only occur when there is a pre-existing Maryland title. We find it more plausible that the Legislature found it necessary to modify the verb "transfer" with the adverbial phrase "on its records" because the direct object of "transfer," *i.e.,* ownership, had already been transferred under the terms of the security agreement. Thus, we find that the phrase "transfer on its records" describes the MVA's ministerial duties when presented with an application for a repossession title, *i.e.,* to note on its records the transfer of the repossessed vehicle. We find this to be a more reasonable interpretation of "transfer on its records" than an interpretation further restricting a secured party's entitlement to a repossession title. We hold that § 13–114(e) does not preclude the MVA from issuing repossession titles to cars titled out-of-state so long as the other requirements of § 13–114(e) have been satisfied.

The General Assembly could have explicitly limited the availability of repossession titles to those vehicles that were titled in Maryland prior to the repossession. The General Assembly has specified elsewhere in the Transportation Arti-

cle that certain provisions apply only to vehicles titled in this state. *See, e.g.,* § 13–506(c)(1) (governing application process that insurance companies must follow to receive salvage certificates for "vehicle[s] *titled in the State* " (emphasis added)); § 13–810(22)(c) (providing that "[o]n transfer of a vehicle *titled in this State* and issuance of a subsequent certificate of title" certain vehicles are exempt from the excise tax (emphasis added)).

 The MVA has urged a contrary interpretation, and as we have recognized, interpretations of the relevant administrative agency are ordinarily accorded deference. *See, e.g., Falik v. Prince George's Hospital,* 322 Md. 409, 416, 417, 588 A.2d 324, 327 (1991). In this case, however, we find the agency interpretation unpersuasive. First, the construction of the statute has been inconsistent within the agency. Rhonda Witt, the representative from the MVA who testified at the trial, indicated that granting a repossession title to cars not already titled in Maryland was never a formal policy of the MVA, but rather a practice of some front-line MVA customer service representatives for many years. When the Attorney General's office became aware of these practices, it advised the MVA to stop issuing repossession titles for repossessed vehicles titled out of state. The MVA then issued the statement dated November 24, 1995, to the same effect. Thus, it is not clear which construction of the statute should be considered the agency's interpretation—that interpretation professed by administrators or that interpretation carried out by the customer service representatives. Second, given the confusion within the agency, it seems unlikely that the Legislature was aware of the agency interpretation. *See Falik v. Prince George's Hosp.,* 322 Md. 409, 416, 588 A.2d 324, 327 (1991) (agency interpretation entitled to "considerable weight" when "administrative interpretation has been made known to the legislature"). Third, we have seen no indication from the MVA that its interpretation of § 13–114(e) grew out of a "process of reasoned elaboration" and it was certainly not the result of an adversarial process or formal rulemaking. *See Balto. Gas & Elec. v. Public Serv. Comm'n,* 305 Md. 145, 161,

501 A.2d 1307, 1315 (1986). The only formal or written statement of the agency's policy is the November 24, 1995, statement signed by the Director of Vehicle Registration stating that the MVA would no longer issue repossession titles to cars not titled in Maryland before the repossession. This Court has observed:

> When an agency clearly demonstrates that it has focused its attention on the statutory provisions in question, thoroughly addressed the relevant issues, and reached its interpretation through a sound reasoning process, the agency's interpretation will be accorded the persuasiveness due a well-considered opinion of an expert body.

*Id.* at 161–62, 501 A.2d at 1315; *see also Magan v. Medical Mutual,* 331 Md. 535, 547, 629 A.2d 626, 632 (1993). In this case, we find no long-standing and consistent agency interpretation that is entitled to deference. *See Comptroller v. John C. Louis Co.,* 285 Md. 527, 545, 404 A.2d 1045, 1056 (1979).

To be sure, § 13–114(e) confers significant discretion on the MVA in determining what information shall be required and who is entitled to repossession titles.[6] That discretion, however, does not extend so far as to allow the MVA to impose barriers to a repossession title that the General Assembly never intended. Requiring, as a pre-requisite, that a vehicle be previously titled in Maryland, even when the secured party presents otherwise adequate documentation from out-of-state, exceeds the discretion conferred by the statute. The discretion contained in § 13–114(e)(1)(iv) allows the MVA to require more information from the secured party than the information explicitly listed in the statute; it does not permit the MVA to limit the class of secured parties entitled

---

**6.** The General Assembly granted the MVA discretion at several points in § 13–114(e). First, § 13–114(e) begins with the permissive verb "may." Also, § 13–114(e)(1)(iv) provides that an applicant for a repossession title must present "any other information that the Administration requires." Finally, § 13–114(2) provides that upon submission by the secured party of the required certification, the MVA may issue a new certificate of title "if it is satisfied that the secured party is entitled to one."

to the benefit of the statute. Likewise, the administrative leeway given the MVA in § 13-114(e)(2) allows the MVA to reject applicants who have not adequately established that they are entitled to a repossession title; it does not grant the MVA discretion to deny a new certificate of title solely because the vehicle was titled out-of-state at the time of the repossession.

Because we hold that "transfer on its records" in § 13-114(e) does not require that the repossessed vehicle be titled in Maryland prior to the repossession in order to receive a new certificate of title, we shall reverse the order of the Circuit Court for Montgomery County dated June 10, 1996. We emphasize that we do not today decide whether Marriott is entitled to the repossession title it seeks on the 1984 Chevrolet repossessed from Houston. In its brief and in oral argument before this Court, the MVA seemed to retreat from the position taken by the circuit judge in his order, and instead focused its argument on the fact that the car in this case was never titled in the debtor's name in Texas, and Marriott's documentation was thus inadequate to establish that "on the basis of the security agreement or other lawful basis, the secured party has a right to the possession of and title to the vehicle." § 13-114(e)(1)(ii). The circuit court made no findings on the status of the Texas title nor did it determine whether Marriott had adequately demonstrated that it was entitled to a repossession title pursuant to § 13-114(e). Accordingly, this issue is not before us and we express no opinion on it.

*JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.*