Dear Treasurer Dixon:
You have requested our opinion on the relationship between § 6-222(a)(6) of the State Finance and Procurement ("SFP") Article, Maryland Code, which permits investment in certain commercial paper up to a specified limit, and SFP, § 6-222(a)(7), which permits investment in certain money market mutual funds without any specified limit. You ask whether the Treasurer and the local officials to whom SFP, § 6-222 applies[1] may invest in money market mutual funds that hold commercial paper.
Our opinion is as follows: SFP, § 6-222(a)(6) and (7) are separate and distinct authorizations. Therefore, an investment official may invest in a mutual fund pursuant to SFP, § 6-222(a)(7), even if the mutual fund holds substantial amounts of commercial paper. If, as your letter suggests, you believe that this investment alternative poses unacceptable risks, the General Assembly may wish to consider an amendment to the statute.[2]
 I Statutory Text
The statute in question, SFP, § 6-222, authorizes the Treasurer to "invest or reinvest unexpended or surplus money over which the Treasurer has custody in" eight investment categories. Article 95, § 22 of the Code generally authorizes local investment officials to invest unexpended or surplus local funds "in obligations or repurchase agreements in accordance with [SFP] § 6-222. . . ."
One of the eight permissible investment categories is "commercial paper that has received the highest letter and numerical rating by at least one nationally recognized statistical rating organization as designated by the United States Securities and Exchange Commission. . . ." SFP, § 6-222(a)(6). This investment alternative is restricted, however: Investments in commercial paper "may not exceed 5% of the total investments made by the Treasurer under this subsection."
Another investment alternative is "money market mutual funds registered with the Securities and Exchange Commission under the Investment Company Act of 1940 . . . and operated in accordance with Rule 2A-7 of the Investment Company Act of 1940. . . ." SFP, § 6-222(a)(7). Some money market mutual funds within this description hold substantial amounts of commercial paper; your letter states that some hold as much as 60% of their investments in commercial paper. Yet, despite the 5% cap in SFP, § 6-222(a)(6), this alternative places no restriction on investment in these funds.
In construing a statute, "[o]ur search for legislative intent begins, and usually ends, with the words of the statute at issue."Marriott Employees Federal Credit Union v. MVA, 346 Md. 437,444-45, 697 A.2d 455 (1997). Ordinarily, when the words of the statute do not set forth a particular restriction, the restriction may not be invoked through statutory construction. "[W]here the language of a statute is clear and unambiguous, we will not add words to reflect an intent not evidenced by that language." In reAdoption No. A91-71A, 334 Md. 538, 566, 640 A.2d 1085 (1994). Seealso, e.g., Marriott Employees Federal Credit Union v. MVA,346 Md. at 445.
To be sure, this general rule has its exceptions. Even unambiguous text is not to be given effect if the language is patently a drafting mistake. Kaczorowski v. City of Baltimore,309 Md. 505, 525 A.2d 628 (1987); 82 Opinions of the AttorneyGeneral ___ (1997) [Opinion No. 97-011 (May 1, 1997)]. Hence, we might find a basis for limiting the apparent scope of SFP, § 6-222(a)(7) if there were evidence in the legislative history that the omission of a restriction about mutual funds holding commercial paper was a drafting mistake. Our review of the pertinent legislative history, however, affords no support for the supposition that the text of SFP, § 6-222(a)(7) reflects a drafting error. Rather, the text accurately reflects the General Assembly's policy decision.
 II Legislative History
SFP, § 6-222(a)(6) and (7) were added by Chapter 304 (House Bill 913) of the Laws of Maryland 1995. When the bill was originally drafted for the House Chairman of the Joint Committee on the Management of Public Funds, the bill would have authorized investment in "money market mutual funds that contain only securities of the organizations listed in paragraphs (1) and (2) of this subsection and which are registered under Securities and Exchange Commission Rule 2A-7 of the Investment Company Act of 1940 as amended." The reference to "securities of the organizations listed in paragraphs (1) and (2) of this subsection" meant obligations of the United States itself and federal agencies and instrumentalities. This language would have precluded investment in money market mutual funds that held commercial paper.
Apparently at the suggestion of the staff of the Treasurer's Office, however, the bill was altered even before introduction, so that the investment alternative for money market mutual funds was no longer limited to those holding federal government obligations. As introduced, the bill provided for investment in "money market mutual funds registered with the Securities and Exchange Commission under the Investment Company Act of 1940 . . . and operated in accordance with 17 C.F.R. § 270.2A-7 and that have received the highest possible rating by at least one nationally recognized statistical rating organization as designated by the United States Securities and Exchange Commission or as approved by the Treasurer." With minor amendments, this provision remained in the bill as enacted.[3] This change in the bill had the effect, which we must presume was intended, of allowing investment in money market mutual funds that held commercial paper. There would have been little point to the change if that were not the objective.
The same legislation authorized direct investment in commercial paper. As introduced, House Bill 913 authorized investment in "commercial paper that has received the highest letter and numerical rating by at least one nationally recognized statistical rating organization as designated by the United States Securities and Exchange Commission." By amendment, the General Assembly added the 5% cap: "provided that such commercial paper may not exceed 5% of the total investments made by the Treasurer under this subsection."[4] The General Assembly made no comparable change to the provision on money market mutual funds, despite its broadening of that provision to allow investment in mutual funds that themselves held commercial paper.
Although the legislative history suggests a desire to "modernize" investment alternatives, it does not specifically discuss the reasons for differential treatment of investments in commercial paper, depending on whether the investment is direct or not. Presumably, the General Assembly concluded that direct investment in commercial paper was more risky than indirect investment in commercial paper through the medium of a money market mutual fund. The General Assembly might have supposed that a mutual fund's decision to hold commercial paper comes only after extensive analysis of risk by professionals at the mutual fund. Accordingly, the General Assembly imposed a 5% limitation on direct investments and no limitation at all on investments via money market mutual funds.
We are not commenting on the correctness of this policy judgment or on related issues, like the degree of risk that governments ought to tolerate in order to obtain the higher rate of return afforded by commercial paper.[5] These are matters on which we defer to your expertise and ultimately the judgment of the General Assembly. We recite these considerations merely to underscore our conclusion that there is no evidence of the kind of drafting error that would allow us to depart from the import of the statutory text.
 III Conclusion
In summary, it is our opinion that investment officials have authority under SFP, § 6-222(a)(7) to invest in money market mutual funds that hold commercial paper, even if the consequence of this investment choice is that indirect investments in commercial paper exceed the 5% cap that would be applicable under SFP, § 6-222 (a)(6) to direct investments in commercial paper.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions Advice
[1] For brevity's sake, this opinion refers collectively to the Treasurer and all local officials who may make investments under SFP, § 6-222 as "investment officials."
[2] The Attorney General's Office takes no position on this policy question.
[3] The requirement that a fund "have received the highest possible rating" from a rating organization was amended in committee to eliminate the alternative of the Treasurer's approval of the rating organization. Two years later, the requirement itself was deleted.
[4] When first added by amendment, the cap was 3%. A subsequent amendment raised the cap to 5%.
[5] SFP, § 6-222(d)(4) delphically instructs investment officials to invest "with due regard for minimizing risk while maximizing return." All investment decisions are to be made under a "prudent person" standard. SFP, § 6-222(d)(1).
 *Page 3