Dear Honorable Maggie McIntosh
You have asked for our opinion whether a particular poster complies with legislation recently enacted by the General Assembly that requires paint retailers to display a poster with information about lead paint hazards.
In our opinion, the poster provided lacks sufficient information to comply with the statutory requirements.
 I Background
A. Statutory Poster Requirement
Your inquiry concerns legislation enacted during the 2003 session of the General Assembly. Chapter 445, Laws of Maryland 2003, codified at Annotated Code of Maryland, Environment Article ("EN"), § 6-848.1. That statute requires retailers who sell paint or paint supplies to consumers to display a poster provided by the Department of the Environment ("the Department") within the area in which paint or paint supplies are sold or displayed or at each register or check-out aisle. EN § 6-848.1(b). For that purpose, the Department is required to develop a poster that includes information about the dangers and hazards of lead poisoning and a telephone number that consumers can call for assistance in lead risk reduction and safe renovation practices. EN § 6-848.1(c).
B. Multi-State Agreement
On May 12, 2003, the National Paint and Coatings Association, an industry trade association, entered into an agreement ("the Multi- State Agreement") with 50 states and territories, including Maryland, to educate consumers about the hazards of lead paint. The agreement requires warning labels on paint containers, and point-ofsale information for consumers, in both English and Spanish, that contains all of the elements of the information found in a brochure of the United States Environmental Protection Agency ("EPA").[1]
The brochure contains information about the health hazards of lead paint and ways in which lead poisoning can occur, as well as guidance on painting and renovation techniques that will help or minimize lead exposure. The Multi-State Agreement does not expressly require that retailers display a poster with the point-of-sale brochures.
C. Poster and Brochures
We understand that the Department has not developed a poster itself for purposes of EN § 6-848.1(c), but has accepted the "poster" developed by the National Paint and Coatings Association industry for use with the boxes of brochures made available under the Multi-State Agreement. The item provided to us as the "poster" is approximately 5 3/4 inches wide and 7 3/8 inches long. Boldface type at the top of the document asks: "Are You Planning to Buy, Rent, or Renovate a Home Built Before 1978?" in English with a smaller Spanish version of the same question. Smaller text below that heading appears on top of an illustration that includes part of the exterior of a home and part of the interior of a bedroom. The text reads:
 Homes built prior to 1978 may contain lead paint. To prevent lead poisoning, please take and review the brochure below or refer to the following sources of information. The sources of information listed are the web sites of the EPA, the National Paint and Coatings Association, and the Department, as well as telephone numbers for the EPA Lead Information Hotline and the general toll-free number for the Department. Additional text provides the same information in Spanish. It is our understanding that posters are being placed on the boxes of brochures distributed under the Multi-State Agreement.
 II Analysis
Your question concerns the adequacy of the item used with the brochures to meet the poster requirements of EN § 6-848.1.
A. "Poster"
A preliminary question is whether an object of this size — 5 3/4 inches wide and 7 3/8 inches long — can be characterized as a "poster." EN § 6-848.1 does not require the poster to be a specific size. The dictionary definition of the term "poster," while not dispositive, provides a useful starting point for determining the meaning of a statutory term. Marriott Employees Federal Credit Union v. MVA, 346 Md. 437, 447, 697 A.2d 455 (1997). Webster's Third International Dictionary (1986) defines a poster as "a bill or placard intended to be posted in a public place," especially one that is "decorative or pictorial."[2] The American Heritage Dictionary of the English Language, Fourth Edition (2000), defines a poster as a "large, usually printed placard, bill, or announcement, often illustrated, that is posted to advertise or publicize something," but does not specify the meaning of "large."
In State v. Pensacola A.R. Co., 9 So. 89 (Fla. 1891), one of the few reported cases addressing the issue of what constitutes an adequate "poster," the court rejected a claim that the print in the poster was too small, stating that "the discretion to say what type the schedule should be has not been vested in [the court]," but in the Railroad Commission, and that in the absence of regulation of the size of the type to be used, the court was powerless to act.[3]
The item provided to us might be more accurately described as a flyer or pamphlet and one might reasonably question whether a piece of paper smaller than the pages on which this opinion is printed is the kind of "poster" intended by the General Assembly. However, where, as here, the statute itself does not specify the size, the Department has accepted this item as a "poster" within the meaning of the statute, and the object in question fits within the general definition of the term "poster," we cannot say that it fails to satisfy the statute due to its dimensions alone.[4]
B. Adequacy of Information
A related question, however, is whether the poster has the information required by EN § 6-848.1(c). The statute requires that the poster contain information about the "dangers and hazards of lead poisoning," as well as a telephone number that consumers may call for assistance in lead risk reduction and safe renovation practices. The poster contains the telephone number for the EPA lead information hotline, and therefore meets the second of these two requirements. However, while the phrase "lead poisoning" appears on the poster, there is no material on the poster that could be referred to as "information about the dangers and hazards of lead poisoning." Rather, the text on the poster simply cross-references the brochure. The brochure that is to be available under the Multi-State Agreement and that is cited in the poster does contain information about the dangers and hazards of lead poisoning. In our opinion, however, a cross-reference to the brochure does not satisfy the statutory requirement that the poster contain such information. The legislative history makes clear that the General Assembly intended that the poster itself include information about the dangers and hazards of lead poisoning.
As introduced, House Bill 719, which became Chapter 445 of 2003, would have required the Department to develop and provide to retailers a brochure that would include information about the dangers and hazards of lead poisoning, lead risk reduction measures, safe renovation practices, and resources available in the State to assist homeowners and property owners in lead risk reduction. These brochures were to be distributed by the retailers to any customer who purchased paint or paint supplies. The House Environmental Matters Committee proposed amendments that changed the brochure requirement to a poster requirement. This change was most likely made in response to a Fiscal and Policy Note on the bill that reflected costs rising from $454,600 in Fiscal Year 2004 to $617,400 in Fiscal Year 2008 for the development and distribution of a brochure. However, the amendments included an uncodified provision that required the Department to work with nonprofit organizations to develop a consumer brochure on the hazards of lead paint and safe renovation practices and to identify potential sources of revenue for production and distribution of the brochure. The amendments proposed by the Committee were adopted.
On the Senate side, in the face of continuing opposition from the Department related to the costs of developing a brochure,[5] and testimony from the National Paint and Coatings Association about the then pending Multi-State Agreement,[6] the brochure was deleted from the bill entirely.[7] However, the mandatory poster was retained, together with the specification that the poster contain information about the dangers and hazards of lead poisoning.
This history clearly indicates that the General Assembly was aware of the brochures required under the Multi-State Agreement and intended that the poster exist independently of the brochures and itself provide the required information. A poster that is largely a bilingual advertisement for the brochure, but provides no educational material itself, does not meet the requirements of the statute. Thus, substantial additional content must be added to the current version of the poster to satisfy the statute. If the addition of that content to a poster of the current size is not comprehensible from a reasonable distance and essentially amounts to the posting of a truncated version of the brochure, it is unlikely to satisfy the statutory poster requirement. See State v. Pensacola A.R. Co., 9 So. 89, 93 (Fla. 1891) (poster requirement not met by hanging pamphlet with the required information on the wall). Thus, it appears likely that the size of the poster will need to be modified as well.
 III Conclusion
In our opinion, the item provided may be considered a "poster," but does not contain sufficient information to fulfill the requirements of the statute concerning the content of the poster. If the item is revised to include the required information, it likely will have to be substantially larger in order to adequately convey that information.
J. Joseph Curran, Jr. Attorney General
Kathryn M. Rowe Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] The text of the agreement is available on the Internet at http://www.paint.org/ind_info/state_ag_agreement.pdf.
[2] See also Merriam-Webster Dictionary Online: http://www.m-w.com/home.htm.
[3] In fact, the term "poster" has been given a broad meaning. In Pollock v. Board of Regents of University of New York, 40 N.Y.S.2d 57,58 (A.D.), aff'd, 52 N.E.2d 600 (N.Y. 1943), the court held that a dentist who mailed calendars to potential patients violated a statutory prohibition against advertising for patronage by means of posters or circulars.
[4] We do not mean to suggest that a poster that is so small that it cannot adequately convey the required content would satisfy legislative objective underlying the statute. See Part II.B. of this opinion.
[5] See Position Paper of Maryland Department of the Environment submitted to Senate Judicial Proceedings Committee on House Bill 719.
[6] See Statement of Heidi K. McAuliffe before the Judicial Proceedings Committee on House Bill 719 (March 27, 2003).
[7] This change reduced the Fiscal Note to a single year expenditure of $13,200. *Page 196