Dear Honorable Thomas Patrick O'Reilly
On behalf of the Workers' Compensation Commission ("Commission"), you have asked for guidance on the requirement in the Workers' Compensation Act that insurers and self-insured employers "have in the State competent individuals who: (1) handle and adjust each disputed workers' compensation claim in the State . . . and (2) possess the knowledge and experience to handle and adjust each disputed claim." Specifically, you ask for an interpretation of several key phrases in that provision:
1. Disputed claim: When does a claim become "disputed"?
2. Competent individual: What is the meaning of the term "competent individual"? More specifically, is any special training or ability required for a person to be a "competent individual," or would a Maryland attorney be presumed to be a "competent individual" when representing an insurer in a disputed workers' compensation matter? Does an attorney whose office is located out-of-state, but who is admitted to practice in Maryland, qualify as a "competent individual" under the law? Does the use of the undefined phrase "competent individual" render the law unconstitutionally vague?
3. Handle and adjust in the State: Is a claim being handled and adjusted "in the State" where the attorney is required to place a call to an out-of-state insurer for authority to settle or resolve a disputed claim?
For the reasons given below, it is our opinion that:
1. A claim is "disputed" unless and until it is determined that the claim will be uncontested. A claim is no longer "disputed" once any issues have been resolved.
2. For purposes of the Act, a "competent individual" is a person who has sufficient skill, knowledge, and experience to handle and adjust workers' compensation claims. An attorney may satisfy that requirement, but there is no presumption to that effect. An attorney who works outside Maryland is not a competent individual "in the State," even if the attorney is admitted to practice in Maryland. The use of the phrase "competent individual" does not render the law unconstitutionally vague.
3. The law does not preclude an out-of-state insurer from exercising oversight of its adjusters and attorneys in Maryland. However, if an attorney representing an insurer must routinely contact an out-of-state representative of the insurer for authority to settle any claim, those claims are not being handled and adjusted "in the State."
 I Introduction
A. Statutory Provisions
The Maryland Workers' Compensation Act, Annotated Code of Maryland, Labor and Employment Article ("LE"), § 9-101 et seq., sets certain standards for an insurer's accessibility to claimants. In particular, it states:
 An insurer that provides workers' compensation insurance in the State shall have in the State competent individuals who:
 (1) handle and adjust each disputed workers' compensation claim in the State for the insurer; and
 (2) possess the knowledge and experience to handle and adjust each disputed claim.
LE § 9-410(a). The statute also requires that the insurer establish a toll-free telephone number for use during normal business hours by claimants and insured employers. LE § 9-410(b). The Act imposes similar requirements on employers who self-insure. LE § 9-405(d). The Commission is authorized to impose a fine of up to $1,000 on an insurer or self-insured employer[1] who fails to comply with these requirements. LE §§ 9-405(d)(3),9-410(c).
B. Regulations
For purposes of this law, the Commission has adopted regulations to distinguish between "disputed" and "undisputed" workers' compensation claims. Those regulations state:
(2) "Disputed workers' compensation claim" means a:
(a) New claim in which issues have been filed;
 (b) Pending claim in which one or more issues have been filed; or
(c) Claim that is pending on appeal.
 (3) "Undisputed workers' compensation claim" means a claim in which all issues have been:
(a) Withdrawn;
 (b) Resolved by a decision of the commission that is not appealed; or
(c) Resolved on appeal.
COMAR 14.09.01.01B(2)-(3).[2]
The Commission has also adopted regulations for enforcement of the statutory requirements. COMAR 14.09.06 (Local Office Requirements for Insurers). In large part, those regulations mirror the language of the statute. However, in several instances, they elaborate on the statute. For example, the regulations state that, if an insurer files issues to dispute a claim, the filing itself must be made by the "competent individuals" who handle and adjust claims for the insurer. COMAR14.09.06.02B. The regulations also specify that a fine of up to $1,000 may be imposed for each violation, that each day an insurer is out of compliance with the statute constitutes a separate violation, and that a self-insured employer risks revocation of self-insurance approval if the employer does not comply. COMAR 14.09.06.03. Finally, the regulations detail hearing and appeal procedures for the adjudication of violations. COMAR 14.09.06.04-.05.
 II Legislative History
A. Local Office Requirement
From the earliest days of the Maryland workers' compensation law until very recently, the law required that each insurer maintain a "local office" to handle workers' compensation matters. See Chapter 456, § 29, Laws of Maryland 1920. That requirement originally read as follows:
 Any insurance company or employer carrying his own insurance, desiring to do compensation insurance in this State, shall be required to keep and maintain a local office in charge of a competent person who shall handle all the compensation work for said insurance company or self-insurer.
Id. Although we could locate no legislative history concerning the origin of this provision, it seems evident that its purpose was to ensure that claims would be handled promptly and effectively and that an insurer would be responsive to injured employees and insured employers. This requirement has reflected the concern that "[c]ompensation administration will be impeded if the everyday handling of claims requires the contacting of distant insurance offices." Workmen's Compensation and Rehabilitation Law, The Council of State Governments (1973).
B. Effort to Eliminate Local Office Requirement
Some have viewed the local office requirement as unnecessary in light of modern communications. This has prompted efforts to modify the requirement.
1. 2000 Legislation
In 2000, a bill was introduced to limit the local office requirement for insurers by making it applicable only to "contested claims." House Bill 1257 (2000) (first reading). That bill was substantially amended, with the result that the local office requirement was retained for all claims and responsibility for its enforcement, with respect to insurers, was shifted from the Insurance Commissioner to the Commission. Chapter 468, Laws of Maryland 2000.[3] In addition, the Legislature added a requirement that each insurer maintain a toll-free telephone number through which a claimant or representative of an employee or claimant can make direct telephone inquiries during regular business hours. Id.[4]
2. 2001 Legislation
The next year, legislation was proposed to eliminate the requirement that an insurer maintain a "local office" and to substitute a requirement that the insurer have a "competent individual" in the State to "handle" disputed claims. Senate Bill 592 (2001) (first reading). Prior to passage, the bill was amended to specify that an insurer must have "in the State competent individuals who . . . handle and adjust each disputed workers' compensation claim in the State . . . and who possess the knowledge and experience to handle and adjust each disputed claim." Chapter 609, Laws of Maryland 2001 (emphasis added). The elimination of a physical office requirement and the limitation to disputed claims remained in the bill.
The deletion of the "bricks and mortar" requirement was apparently a response to testimony by insurers that centralized claims operations would result in administrative efficiency. See Bill Analysis of Senate Bill 592 for Senate Finance Committee (2001). Proponents of the bill argued that developments in communications technology would allow uncontested claims to be handled more efficiently in a centralized location. See Testimony on behalf of MAC Risk Management before Senate Finance Committee concerning SB 592 (March 13, 2001). Similarly, a representative of Giant Food stated that the bill would allow for streamlined processing of the 85% of its claims that are uncontested. Letter of Barry F. Scher to Senator Thomas L. Bromwell (March 7, 2001); see also Letter of Dolores M. Skalski, President of Mid-Atlantic Food Dealers Association, Inc. to Senator Thomas L. Bromwell (March 8, 2001).
The testimony on the bill echoed presentations made to the Workers' Compensation Benefit and Insurance Oversight Committee during the 2000 interim. That Committee reported that
 carriers assert that the process would be more efficient if they could send bills for certain simple claims to a central place, possibly out of State. Some insurers expressed interest in sending simple "medical only" claims to a central processing location, while others stressed the need to go broader and send all simple "uncontested" claims regardless of whether they are "medical only."
Workers' Compensation Benefit and Insurance Oversight Committee, Report of the 2000 Interim, p. 2. Proponents of a limited presence requirement testified that the bill would allow insurers to reduce costs because bills would be sent to a central place, and thus enable an insurer to better serve employees. Id., p. 26.
Concerns were expressed, however, that there would be delays and that remote offices would be unfamiliar with Maryland workers' compensation law and with resources available for injured workers in Maryland. Testimony of Chesapeake Association of Rehabilitation Professionals in the Private Sector before Senate Finance Committee (March 13, 2001); Letter of Chaney Enterprises to Senator Arthur Dorman (March 13, 2001).
The amended bill that emerged sought to address the concerns of both sides by requiring that disputed claims be handled and adjusted in Maryland while, at the same time, allowing for centralized processing of undisputed claims. In other words, disputed or contested claims were to be handled in Maryland, while uncontested claims could be handled out-of-state.
 III Analysis
A. Disputed Claims
Under LE § 9-410(a) and § 9-405(d), a "disputed" workers' compensation claim is to be "handled and adjusted" by a competent individual in the State. You have asked when a claim is considered "disputed."
The Workers' Compensation Act does not define "disputed workers' compensation claim." However, the Act sets forth certain procedures for an employer or insurer to contest a claim. Under LE § 9-713, after a claim is filed with the Commission, the employer or its insurer must either begin paying benefits or file an issue with the Commission to contest the claim. As you noted in your request, some issues may also be filed with the Commission later in the process — for example, when a claimant seeks reinstatement of temporary total disability benefits.
The Commission's regulations reflect this procedure by defining the phrase "disputed workers' compensation claim" to include any claims in which issues are filed with the Commission, as well as appeals of those claims. COMAR 14.09.01.01B(2). "Undisputed" claims are those for which issues have been withdrawn or otherwise resolved. COMAR 14.09.01.01B(3). The regulations are silent on whether a claim should be considered "disputed" or "undisputed" during the period between its filing and the deadline for filing issues.
In our opinion, a pending claim should be treated as "disputed" prior to the deadline for filing issues, if the insurer has not commenced payment of benefits. As outlined above, the Legislature modified the local office requirement in 2002 to limit it to "disputed" claims. It is evident from the legislative history that the purpose of that amendment was to increase administrative efficiency by allowing an insurer to consolidate the handling of uncontested claims that largely involve administrative processing, if the insurer finds it more efficient to do so.
Thus, during the period between the filing of a claim and the deadline for filing issues, the claim should be treated as "disputed," unless the insurer has commenced paying the claim.[5] If issues are filed, it remains a disputed claim until those issues are resolved. Once it is determined that a claim will be uncontested and that no issues will be filed, it is not "disputed" and need not be handled by an individual in Maryland. If issues are later filed for some reason, the claim would then become "disputed" for purposes of the local handling requirement.
B. Competent Individual
As noted above, the Act has required since 1920 that an insurer have a "competent individual" in Maryland in charge of its workers' compensation business. Currently, the Act specifies that an insurer must rely on the services of "competent individuals who . . . possess knowledge and experience to handle and adjust each disputed claim." You have asked several questions related to the use of the phrase "competent individual."
1. Meaning
You ask first the meaning of the phrase "competent individual." That phrase is not defined in the statute.[6] The common dictionary meaning provides a useful starting point. See Marriott Employees Federal Credit Union v. MVA, 346 Md. 437, 447, 697 A.2d 455 (1997). One dictionary defines "competent" as "having suitable or sufficient skill, knowledge, experience for some purpose." Random House Dictionary of the English Language 417 (2 ed. 1987). In the present context, the purpose, as the statute nd indicates, is the handling and adjustment of workers' compensation claims. Thus, a "competent individual," for purposes of LE § 9-410(a) and § 9-405(d), is a person who has sufficient skill, knowledge, and experience to handle and adjust workers' compensation claims.
2. Attorney as Competent Individual
You also ask whether any special training or ability is required for an individual to qualify as a "competent individual," and whether an attorney representing an insurer with respect to a disputed claim can be presumed to meet that standard. The statute does not require any particular training, but rather knowledge and experience in the handling and adjustment of workers' compensation claims.[7] The Commission could issue interpretative regulations elaborating on the statutory requirement. See 75 Opinions of the Attorney General 37, 49-50 (1990) (describing the effect of interpretative rules). An attorney could meet those qualifications if the attorney has had experience in handling and adjusting claims. However, given that most attorneys do not handle or adjust workers' compensation claims, there is no presumption that an attorney satisfies the statutory requirement for a "competent individual who . . . possess[es] the knowledge and experience to handle and adjust . . . disputed claim[s]."
You ask whether an attorney whose office is located out-of-state, but who is admitted to practice in Maryland, could qualify as a "competent individual" for purposes of the workers' compensation law. Even if the attorney otherwise qualified as a "competent individual" based on his or her knowledge and experience in handling and adjusting claims, the attorney would not be "in the State" if the attorney performed such work in an office outside Maryland.[8]
3. Whether the Phrase is Unconstitutionally Vague
You state that, in an effort to insure compliance with the law, the Commission has required that an attorney representing an insurer certify that the claim had been "handled and adjusted by a competent individual within the State." Apparently, members of the defense bar object that they are unable to certify that a person is a "competent individual" because the term "competent" is not defined. You ask whether the lack of a statutory definition renders the phrase unconstitutionally vague.
The void-for-vagueness doctrine is rooted in the Fourteenth Amendment's guarantee of procedural due process. Finucan v. Maryland Board of Physician Quality Assurance, 380 Md. 577, 846 A.2d 377, 385 (2004). It embodies two basic principles: (1) that a statute give "fair notice" to persons of ordinary intelligence of what is prohibited; and (2) that it provide legally fixed standards and adequate guidelines for police, judicial officers, triers of fact and others who are obliged to enforce, apply, and administer the law. Id at 385-86. The void-for-vagueness doctrine does not require absolute precision. There is no requirement that each term in a statute be defined in that statute. Nor is a statute unconstitutionally vague merely because it allows for the exercise of some discretion on the part of agency officials. "It is only where a statute is so broad as to be susceptible to irrational and selective patterns of enforcement that it will be held unconstitutional . . . ." Id., quoting Bowers v. State, 283 Md. 115, 122, 389 A.2d 346 (1978).
As noted above, the statutory provisions requiring that insurers have "competent individuals" in the State specify the nature of the competence required — knowledge and experience in the handling of claims — and the circumstances under which that competence is to be exercised — disputed claims. Thus, they sufficiently inform an insurer of the obligation imposed by the statute. They state that obligation in plain language that can be understood by people of ordinary intelligence. See Unnamed Physician v. Commission on Medical Discipline, 285 Md. 1, 15, cert. denied, 444 U.S. 868 (1979). Finally, while the statutes do give the Commission some discretion to determine whether an individual is competent in handling and adjusting claims, that discretion is not unfettered. Thus, the longstanding requirement of the State Workers' Compensation Act that an insurer use "competent individuals" within the State to handle and adjust claims is not void for vagueness.
C. Consultation with Out-of-State Office
You state that the Commission has required attorneys representing insurers to certify that they will "handle and adjust" claims within the State. Some attorneys have objected to the use of the term "adjust," stating that they receive authority to compromise claims on a case-by-case basis by telephone from an out-of-state adjuster. You ask whether a claim is being "handled and adjusted by a competent individual within [Maryland]" if an attorney is required to call an out-of-state insurer for authority to settle or resolve a disputed claim.
If an insurer's primary office is located in another state, there undoubtedly will be occasions when a "competent individual" designated to handle and adjust claims in Maryland will need to contact that office to discuss the insurer's policies and procedures or even a particular case. Such consultations do not mean that claims are being handled and adjusted outside Maryland. On the other hand, if the insurer's representative in Maryland has no authority to settle claims without first contacting the out-of-state office, in reality the claims are being adjusted by the out-of-state office. Thus, if an attorney must routinely contact an out-of-state office of an insurer to settle claims, the insurer is not in compliance with the local office requirement of the Maryland statute.
 IV Conclusion
In summary, it is our opinion that:
1. A claim is "disputed" unless and until it is determined that the claim will be uncontested. A claim is no longer "disputed" once any issues have been resolved.
2. For purposes of the Act, a "competent individual" is a person who has sufficient skill, knowledge, and experience to handle and adjust workers' compensation claims. An attorney may satisfy that requirement, but there is no presumption to that effect. An attorney who works outside Maryland is not a competent individual "in the State," even if the attorney is admitted to practice in Maryland. The use of the phrase "competent individual" does not render the law unconstitutionally vague.
3. The law does not preclude an out-of-state insurer from exercising oversight of its adjusters and attorneys in Maryland. However, if an attorney representing an insurer must routinely contact an out-of-state representative of the insurer for authority to settle any claim, those claims are not being handled and adjusted "in the State."
 J. Joseph Curran, Jr. Attorney General
 Kimberly S. Ward Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] In the remainder of this opinion, we use the term "insurer" to encompass both insurers and self-insured employers.
[2] The phrase "undisputed workers' compensation claim" does not appear in the statute or otherwise in the regulations. Nor does the definition appear to cover claims for which no issues are ever filed and that therefore are not the subject of any dispute. Its presence in the definitions section of COMAR 14.09.01 appears designed simply to clarify when the Commission will consider a formerly "disputed" claim to no longer be "disputed."
[3] That legislation also recodified the "local office"requirement for workers' compensation insurers from the Insurance Article to the Labor and Employment Article, where it was codified with similar provisions pertaining to self-insured employers and governmental self-insurance groups.
[4] Insurers were required to make the toll-free telephone number available for insureds, as well as employees, claimants, and their representatives.
[5] This conclusion is consistent with advice previously provided by this Office. See Letter of Assistant Attorney General Kathryn M. Rowe to Senator Thomas L. Bromwell and Delegate Michael E. Busch (September 18, 2001).
[6] For a brief period, the Commission's regulations defined "competent individual" as "an individual possessing the knowledge and experience to handle claims arising under the Maryland Workers' Compensation Law." That definition, which referred to the handling but not the adjustment of claims, was adopted in 2001, but eliminated the following year. See 28:10 Md. R. 949 (May 18, 2001); 29:17 Md. R. 1382 (August 23, 2002). When the Commission eliminated the definition in 2002, it also added a new regulation tracking the statutory language that requires "competent individuals who . . . possess the knowledge and experience to handle and adjust each disputed claim." Id.
[7] While the terms "handle" and "adjust" are not specifically defined in the statute, their meaning is well understood in the context of insurance. A treatise on insurance law explains that "[o]nce the insured has provided adequate notice and proof of loss, or notice of claim or occurrence, the insured's claim is in the hands of the insurer", which marks the beginning of the "claims handling process." 14 Couch on Insurance 3d 198:1. To "adjust"an insurance claim is "to determine the amount that an insurer will pay an insured to cover a loss." Black's Law Dictionary 43 (7th ed. 1999); see also 46A C.J.S. Insurance § 1343 ("adjuster" is one "whose business it is to ascertain the loss and agree with insured on the settlement").
[8] We assume the reference to an "out-of-state office" in your question means that the attorney would be handling or adjusting claims from that office. The mere fact that an attorney has an out-of-state office does not, by itself, disqualify the attorney from handling or adjusting claims. *Page 135